IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRESTON CATCHINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.  04-353 Erie |
| | ) |
| STATES, LT.; IRWIN, C.O.; | ) |
| SAYERS, C.O.; ADAMS, C.O.; | ) |
| BEDDICK, SGT. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' SUPPLEMENTAL BRIEF

This is a supplemental brief in compliance with the Court's Order of September 12, 2005.

## ARGUMENT

Plaintiff argues that he was not able to exhaust prison administrative remedies under DC-ADM 804 because he was transferred from SCI-Albion to SCI-Cresson on March 14, 2005 without his needed and necessary legal materials, and so could not complete exhaustion of administrative remedies by taking an appeal to Final Review of the Central Office of the DOC. Defendants have been ordered to respond to him in light of Brown v. Croak, 312 F. 3d 109 (3d Cir. 2002), which holds that exhaustion is excused if the prisoner has been misled or otherwise prevented by prison officials from completing due exhaustion under DC-ADM 804.  (For instance, in Brown the prison inmate was allegedly advised by officials to hold off on filing his

grievance until after they had completed their investigation and then they never told him that the investigation was completed.)

First, there are two grievances here – No. 102053 and No. 107264. Plaintiff actually did take his appeal to Final Review on No. 102053. He then received a response on January 10, 2005 from the Chief Grievance Officer denying the appeal because he had manifestly ignored a previous directive that had been sent to him personally by the Chief Grievance Officer on September 9, 2003, in which she told him she would no longer tolerate his failure to include the full set of supporting documents that are itemized in DC-ADM 804 and that accordingly have to be included in an appeal to Final Review for it to be proper and once again had failed to provide this required documentation. See, Exhibit B to Defendants' Summary Judgment Brief (May 23, 2005). Thus Catchings failed to take a proper appeal.

This is a plain and clear procedural default and it happened over two months before his alleged transfer to Cresson. This means the transfer to SCI-Cresson is no excuse. And he never tried to cure the default by a proper filing after January 10, 2005 or otherwise challenge the denial in the 2 months he was still at Albion. Cf., Jackson v. Gordon, 2005 WL 2077184, note 6 (3d Cir.) Default disposes of all of his claims arising out of the alleged cell search, strip search and beating and failure to provide him with medical treatment for the resulting injuries on November 12 and 13, 2004. Id.

Second, he filed this civil action prematurely on November 15, 2004, plainly without ever trying to exhaust his administrative remedies on the first grievance at No. 102053. Actually, he filed the grievance on November 17, 2004, two days after he filed the complaint. Id. He also filed this civil action several weeks before the new and additional events itemized in his second grievance at No. 107264 that complains about alleged additional failures to give him

2

medical treatment had ever occurred, and months before he allegedly had been transferred to SCI-Cresson. See Exhibit A, op. cit. In fact, he was granted i.f.p. status on January 10, 2005, over two months before the supposed transfer – and the same day that the Chief Grievance Officer denied his Final Review of his first grievance for his persisting procedural nonchalance and disregard for the rules in failing to attach the necessary documentation, ordained as required by DC-ADM 804, to be attached to a Final Review, despite having been warned in writing earlier by the DOC's chief hearing officer not to do this. Therefore, his lawsuit does not actually incorporate the second, essentially supplemental grievance regarding the alleged continued denial of medical treatment, while his transfer to Cresson took place after Final Review of his initial, primary grievance had taken place.

        Catchings efforts to exhaust administrative remedies were desultory and idiosyncratic if not self-indulgent. He was not thwarted in them by prison officials. Indeed his attempt to say so verges upon a fraud on this Honorable Court.

        Furthermore, the fact that he filed this complaint before he had exhausted administrative remedies on either grievance is fatal to his suit under the PLRA independently.

        In Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) the Court held that Congress intended in enacting the PLRA that exhaustion of administrative remedies must precede the filing of an inmate's civil rights action. Id., 77 n.12; 42 U.S.C. § 1997e(a). The PLRA was designed expressly to reduce the volume of prisoner litigation by encouraging use of administrative alternatives. Ray v. Kertes, 285 F.3d 287, 292 (3d Cir. 2002). These concerns are ill-served by allowing an inmate to go to court before filing a grievance or exhausting its review. Instead to allow this potentially would foster a kind of opportunistic "wait and see" attitude toward the whole prison remedial process both administrative and legal: file both at the same

time in order to see which gets you what you want soonest; or file the civil rights lawsuit whenever you want and let the grievance decision catch up with it but meanwhile start to take discovery; file a federal lawsuit as leverage for the prison grievance, etc. An inmate should not be able to disregard the law's dictates in how he should go about seeking redress to his benefit or at least without sanction.

Dicta in Ali Ahmed v. Dragovich, 297 F.3d 201 (3d Cir. 2002), at footnote 9 characterizes defendants' position that the premature filing of a prisoner's civil rights action ought to be considered as contrary to the PLRA as a "plausible" one.

Moreover, it is precisely the position taken by the U.S. Supreme Court in dealing with analogous provisions of the PLRA.

In McNeil v. U.S., 508 U.S. 106 (1993), Justice Stevens, writing for the Court, dealt with the case of an Illinois state prisoner, who complained that he had been seriously injured while participating as a "human guinea pig" in medical experiments conducted under the auspices of the U.S. Public Health Service, and who consequently had brought suit pro se under the FTCA, although without having first exhausted available administrative remedies as plainly mandated by the language of the statute just as in the case of the PLRA. Even though the pro se plaintiff later had pursued his potential administrative remedy after he had filed the lawsuit and although his administrative claim had been denied long before the government moved to dismiss his complaint, nevertheless he was held to be barred from bring suit under the FTCA by the plain meaning of the statutory language mandating exhaustion of administrative remedies before such suit could be commenced. The Court thus did not permit a prematurely filed FTCA claim to be "cured" by the subsequent pursuit and/or denial of administrative remedies after the filing of the suit. That is, McNeil was not allowed to begin his FTCA suit first and then let his exhaustion of

4

administration or remedies "catch up" to it, so to speak, -- even though nothing had happened in the case before administrative relief was denied. The "unambiguous" statutory language of the FTCA that provides "action shall not be instituted … unless" the plaintiff has first sought administrative relief, which has been finally denied, does not allow a contrary conclusion. Id., 111 "[C]ongress intended to require complete exhaustion … before invocation of the judicial system and on the Department of Justice which must assume defense of such actions." Id; at 112 (footnote omitted). Also, Justice Stevens states, "[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." Id., at 113.

This same analysis should apply equally under the PLRA.

### CONCLUSION

WHEREFORE, judgment should be GRANTED in defendants' favor and against plaintiff.

Respectfully submitted,

**THOMAS W. CORBETT, JR.**
**Attorney General**

By:   s/Kemal Alexander Mericli
Kemal Alexander Mericli
Senior Deputy Attorney General
Attorney I.D. No. 27703

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA   15219
Date: September 26, 2005

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the within Brief In Support of Defendants' Supplemental Brief was served upon the following via first-class mail on September 26, 2005.

Preston Catchings, BJ-8956
State Correctional Institution
  at Cresson
P.O. Box A, Old Route 22
Cresson, PA 16699-0001

                                                _____
                                                Kemal Alexander Mericli
                                                Senior Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Date: September 26, 2005